IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

CASE NO. 15-CIV-10068-JLK

GREAT AMERICAN
INSURANCE COMPANY,

      Plaintiff,

vs.

FOUNTAIN ENGINEERING, INC;
FOUNTAIN UNDERGROUND
CONSTRUCTION, INC.; AMY M. FOUNTAIN;
and ERNEST M. BROWN

      Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court upon Plaintiff Great American Insurance Company's Motion for Preliminary Injunction (DE 30), which was filed on September 11, 2015. The matter has been fully briefed.[1]

**I.    INTRODUCTION**

Plaintiff's Motion for Preliminary Injunction (DE 32) seeks an order compelling the specific performance of a provision contained in an Agreement of Indemnity ("Agreement") alleged to have been executed by Plaintiff and Defendants Amy M. Fountain ("Fountain") and Ernest M. Brown ("Brown"), characterized by Plaintiff as a collateral security provision.

---

[1] The Court has also considered Defendants Amy M. Fountain and Ernest M. Brown's September 18, 2015 Response in Opposition to the Motion for Preliminary Injunction (DE 32), as well as Plaintiff's September 28, 2015 Reply in Support of the Motion for Preliminary Injunction (DE 33).

"As one federal court of appeals has succinctly explained, '[a] collateral security provision provides that once a surety . . . receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve. If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor.'" *Travelers Cas. & Sur. Co. of Am. v. Indus. Commercial Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906, at *2 (M.D. Fla. Oct. 9, 2012) (quoting *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)). This particular clause requires Fountain and Brown to post funds as prospective cover for Plaintiff's actual and potential losses "as soon as liability exits or is asserted . . . whether or not [Plaintiff] shall have made payment therefore." Plaintiff is able to set the amount of collateral at its discretion.

Plaintiff urges that Fountain and Brown must now deposit collateral while claims against the underlying bonds are investigated, adjusted, contested, or litigated and seeks a preliminary injunction ordering Defendants to deposit with Great American $500,000.00 in cash, cash equivalents, or other immediately available funds as collateral within fifteen days of the Court's order, prohibiting Defendants from selling, transferring, alienating, improving or encumbering any real or personal property until the collateral deposit has been made, requiring that Defendants perform a full accounting of all assets owned and the disposition of any assets since February 1, 2015, and waiving the requirement for Great American to post an injunction bond.

## II.   LEGAL STANDARD

This case is before the Court on diversity grounds pursuant to 28 U.S.C. § 1332; therefore, Florida choice-of-law rules apply. *See Attorney's Title Ins. Fund, Inc. v. Regions*

2

*Bank*, 491 F.Supp.2d 1087, 1093 (S.D.Fla.2007) ("Florida law indisputably governs the substantive issues in a case where the federal court's jurisdiction is based on diversity of citizenship."); *Mazzoni Farms v. E.I. Dupont De Nemours & Co.*, 166 F.3d 1162, 1164 (11th Cir.1999) (applying Florida's choice-of-law rules in a diversity case). Since the Agreement was executed in Florida for work to be performed in Florida, under Florida choice-of-law rules, Florida substantive law applies. *Morgan Walton Prop. v. Int'l City Bank & Trust Co.*, 404 So.2d 1059, 1061 (Fla.1981) ("Florida's established rule for choice of law governing the validity and interpretation of contracts looks to the law of the place of contracting and the law of the place of performance.").

The Eleventh Circuit has explained that in diversity cases, "[i]n the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions from Florida's intermediate appellate courts." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir.2004) (citing 17A James Wm. Moore, et al., *Moore's Federal Practice* § 124.22[3]. 124–87, 124–88). Florida District Courts of Appeal are the law of Florida unless and until overruled by the Florida Supreme Court. *Pardo v. State*, 596 So.2d 665, 666 (Fla.1992). Thus, "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983) (citations omitted). Only "[i]n the absence of precedents from Florida's intermediate appellate courts ... may [we] consider the case law of other jurisdictions that have examined similar [issues]." *State Farm Fire,* 393 F.3d at 1231. The objective is for the Federal Court to determine the issues of state law as it believes the Florida Supreme Court would. While neither the Florida Supreme Court nor Florida's

3

intermediate appellate courts have spoken definitively on all the issues raised by the instant motion, Florida cases guide the decision in this case.

To obtain a preliminary injunction, Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of relief would serve the public interest." *Schiavo ex rel. Schindler v. Shiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). "[A] preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted).

## III. DISCUSSION

### A. Substantial Likelihood of Success on the Merits

Plaintiff argues that the specific performance of this kind of collateral security clause is routine and mentions in support the common law doctrines of exoneration and *quia timet*. Taken together with the contractual language, Plaintiff argues that it has clearly established a substantial likelihood of success on the merits.

Preliminarily, the Court notes that the equitable remedies of specific performance and preliminary injunction are distinct.[2] Specific performance, like all equitable remedies,

---

[2] As Judge Posner has explained:

> In every case in which the plaintiff wants a preliminary injunction he must show that he has "no adequate remedy at law," *and* . . . that he will suffer "irreparable harm" if the preliminary injunction is not granted. The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that

requires the absence of an adequate remedy at law. *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. Dist. Ct. App. 2005). Nonetheless, judgment on the merits is required prior to the issuance of a decree of specific performance. *See Humphrys v. Jarrell*, 104 So. 2d 404, 408 (Fla. Dist. Ct. App. 1958) ("[D]ecree is permissible only where the pleadings, depositions, or admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment or decree as a matter of law. The burden of proof is upon the party moving for . . . decree to show lack of a genuine issue of material fact, and all doubts as to the existence of such fact must be resolved against the movant."). On the other hand, the issuance of a preliminary injunction is procedurally truncated, occurring prior to judgment on the merits, and, for that reason, it is an extraordinary remedy requiring both the absence of adequate remedy at law and the clear establishment of the burden of persuasion as to each of the four prerequisites. *See Siegel*, 234 F.3d at 1176. In sum, there is "no automatic connection . . . between the ordinary remedy of specific performance and the extraordinary remedy of a preliminary injunction"; to find otherwise "would be to create a *per* se rule that would eliminate the crucial . . . test for preliminary conjunctions, in such cases where specifically enforceable contractual provision are at issue." *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1151 (S.D.N.Y. 1990).

---

> the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief. Only if he will suffer irreparable harm—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction.

*Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir.1984).

As to substantial likelihood of success on the merits, Plaintiff must cite facts that clearly establish a legal right to specific performance. While it might be undisputed that Defendants Brown and Fountain have not provided collateral, both deny the validity of the underlying Agreement. *See* DE 14 at ¶¶ 10, 17, 18, 23; DE 15 at ¶¶ 10, 17, 18, 23. In addition, both assert as affirmative defenses, among others, that Plaintiff lacks legal capacity, that Plaintiff has waived its rights, and that the guarantee was given without consideration. *See* DE 14 at ¶¶ 49, 50, 54; DE 15 at ¶¶ 49, 50, 54. Whether any such denial or defense is valid is the subject of the instant case and controversy. The legal truism that sureties are routinely entitled to the specific performance of validly executed collateral security clauses does not impact upon whether the provision in the instant case is substantially likely to be valid.[3] Especially on a motion for preliminary injunction, "[i]t is not enough that a merely colorable claim is advanced." *S. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136-CIV, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011).

Aside from referencing contractual language, Plaintiff cites no facts and ignores the Defendants' defenses and denials. At best, Plaintiff cites the Agreement itself, which seems to bare the signatures of Defendants Brown and Fountain. In Response, Defendants do not contest the veracity of their signatures but do emphasize that the "contractual clauses [remain] subject to the answer and affirmative defenses," which repeatedly deny the validity of the underlying Agreement. Failure to respond to those denials and defenses with requisite factual support leads to the conclusion that Plaintiff has not clearly established its burden of

---

[3] As instructive example, contracts for sale of land are routinely entitled to specific performance, but if the parties are in dispute as to the validity of the underlying contract, there is no presumption of substantial likelihood of success on the merits— the outcome turns upon on the facts.

6

persuasion as to substantial likelihood of success on the merits. *See Wood v. Hammel*, 132 Fla. 164, 167 (1937) ("[W]hether the specific performance of a contract will be granted depends in a large measure on the facts in the case."); *Daubmyre v. Hunter*, 86 Fla. 326, 328 (1923) ("The consideration being denied, the burden of proving it rested upon the complainant.").

### B. Irreparable Injury

In support of the proposition that the nature of the injury in collateral security cases is the lack of collateralization posted while claims are pending, and that nothing can remedy that injury after the fact, Plaintiff cites case law. *See e.g. Travelers Cas. & Sur. Co. of Am. v. Indus. Commercial Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906, at *4 (M.D. Fla. Oct. 9, 2012); *Hanover Ins. Co. v. Holley Const. Co. & Associates*, No. 4:11-CV-41 CDL, 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012); *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, 2011 WL 4715155, at *4 (W.D. N.C. 2011); *Developers Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.*, No. 09-21678-CIV, 2009 WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009). However, none of the cases cited constitute binding precedent and this Court stresses that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 445 F. Supp. 875, 877 (S.D. Fla. 1978) *aff'd*, 626 F.2d 1171 (5th Cir. 1980). Furthermore, it is settled law that "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 909 F.2d 480, 487 (11th Cir. 1990); *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983).

Upon review, the Court finds that the cases cited by Plaintiff make the mistake of bootstrapping claims for breach of contract into *de facto* findings of irreparable injury.[4] Certainly, the purpose of a collateral security clause is to provide sureties with access to financial cushioning during the pendency of claims and, where violated, the surety suffers ongoing harm in the form of missing money, but, whatever the loss, whether to financial security or otherwise, it is monetary in character, and may be adequately remedied by a judgment on the merits. *See Snook*, 909 F.2d at 487; *Cate*, 707 F.2d at 1189. Characterizing the missing money as absent collateral does not alter this understanding. This Court holds that "[t]he fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment [or decree], does not constitute 'irreparable harm' so as to warrant the extraordinary remedy of a preliminary injunction." *Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990).[5]

Plaintiff also contends that the contractual language itself mandates the issuance of a preliminary injunction, because if such language is not enforced, it "will be rendered meaningless"—but to imbue fundamentally meaningless contractual language with legal meaning, simply because it is otherwise meaningless, is circular at best. Indeed, "the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate." *Keating*, 753 F. Supp. at 1154.

---

[4] In any claim for breach of contract, the nature of the injury includes the loss of the benefit of the bargain while claims are pending. The time value of money is well understood, yet the loss of money for a period of time is not a *de facto* irreparable injury; such losses are compensable through an award of monetary damages or a decree of specific performance. Cases cited to the contrary fail to convincingly distinguish the collateral security clause.

[5] Nonetheless, to accommodate Plaintiff's desire for speedy resolution on the merits, pretrial conference and trial set in the Scheduling Order (DE 17) are to be vacated and new dates set by separate Order of the Court.

8

*See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, (2008) ("A preliminary injunction is . . . never awarded as of right"); *Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("We also agree with the district court that the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate"); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) ("The provision relative to 'obtaining an injunction or other equitable relief' is merely declaratory of existing legal rights."). "It would represent an extraordinary variance from this basic principle for a court to recognize that the parties to a suit at equity have contracted around one of the fundamental elements." *First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 235 (M.D. Pa. 2001). Upon review, this Court holds that that the portions of the collateral security clause purporting to contract for irreparable injury and injunctive relief do not carry weight.

A related consideration, relevant to the alleged irreparability of the harm, is timeliness. The Second Circuit has observed, and others agreed, that "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). *Accord Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355 (S.D. Fla. 2002). *See also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1017 (10th Cir. 2004) (stating that willingness to put up with a situation in the past can serve as an indication that the party's injury is not as serious as alleged.); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872

9

F.2d 75, 80 (4th Cir. 1989) (affirming district court's conclusion that potential harm was a product of plaintiff's own delay in pursuing the action); *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) (stating that lack of diligence, standing alone, may, preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice). Indeed, a delay in bringing suit may defeat a presumption of irreparable harm. *Structural Tenting Corp. v. The Termite Doctor*, No. 09-21285-CIV-COOKE, 2010 WL 2650910, at *2 (S.D. Fla. June 30, 2010).

In the instant case, Plaintiff admits to receiving notice that Fountain Engineering was experiencing financial problems sometime in February of 2015. On March 30, 2015, Plaintiff claims to have demanded that Defendants post collateral. On May 12, 2015, Plaintiff brought suit and then waited four months, until September 11, 2015, to file the instant motion. The dilatoriness detailed above compels this Court to rule consistent with the ancient maxim that equity aids the vigilant, not those who slumber on their rights. 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2946 (3d ed.). For the reasons set forth above, this Court finds that Plaintiff has not met its burden of persuasion to clearly establish that irreparable injury will be suffered if the requested relief is not granted.

**C. Potential Harm**

Plaintiff's argument that the threatened injury outweighs the harm the requested relief would inflict on the nonmovant consists of three sentences, two of which are substantive. The overall gist of that argument is that there is a valid contract, so no harm, no foul. As already discussed, the validity of the contract remains the subject of the ongoing case and controversy; thus this section contains legal conclusion, not argument. Regardless, the threatened harm to Plaintiff is the lack of collateral posted following notice that Fountain

Engineering might default on its bonds. On the other hand, the requested relief would inflict upon Defendants the compelled posting of collateral, the $500,000.00 amount of which has been set at the absolute discretion of Plaintiff, prior to an adjudication on the merits.

**D. Public Interest**

In support of the argument that "the public interest favors enforcement of contracts, as well as solvency of sureties," Plaintiff cites to a decision of the United States District Court for the Southern District of Florida.[6] DE 30 at 13 (citing *Developers Sur. & Indemn. Co. v. Elec. Serv. & Repair, Inc.*, 2009 WL 3831437, *2 (S.D. Fla. 2009) ("[T]o the extent that the public has *any* interest in the instant proceedings, such interest would be in seeing that contractual agreements between parties are upheld and in the continued solvency of surety companies for the public benefit.")).This Court cannot disagree that the public interest favors the enforcement of contracts—the public interest favors the enforcement of the law in general. Nonetheless, the question presented by the instant motion is whether the public interest favors the specific performance of this particular kind of contract through the extraordinary remedy of a preliminary injunction. This Court holds that it is not in the public interest for the alleged collateral security provision in this case to commandeer the levers of equity, which move in all instances at the discretion of the court, in the independent interests of fairness and justice.

**E. Quia Timet and Exoneration**

---

[6] The Court notes also that Plaintiff cites to a separate decision of the Southern District of Florida, which it finds to be inapposite for a number of reasons, primarily because the Court there entered a permanent injunction, not a preliminary injunction. The defense counsel in that case also admitted to the defendants' poor financial health, teetering on the abyss.

Plaintiff does not develop factual argument in support of its purported right to exoneration and *quia timet* but instead states generally that the rights of exoneration and *quia timet* "compliment and supplement" its rights under the Agreement. DE 30 at 9. Due to the absence of any reference to facts, this theory is not yet due to be examined. *See id.* Nonetheless, given disagreement with the reasoning of *Developers Surety & Indemnity Co.*, which roots itself in the doctrines of exoneration and *quia timet*, the Court engages in further examination. *See* 2009 WL 3831437, *2.

All three Florida cases cited in *Developers Surety & Indemnity Co.* for the proposition that the "use of [preliminary] injunctive relief is appropriate to protect the surety's contractual, common-law and equitable rights of exoneration and *quia timet*" are inapposite. *See id.*, at *2 (citing *Liberty Mutual Ins. Co. v. Aventura Engineering & Construction Corp.*, 534 F.Supp.2d 1290 (S.D. Fla. 2008); *Canal Authority of State of Fla. v. Calloway*, 489 F.2d 567 (5th Cir. 1974); *Louis v. Meissner*, 530 F.Supp. 924 (S.D. Fla. 1981)). The first case, *Liberty Mutual Inurance. Co.*, involved the issuance of a *permanent* injunction, not a preliminary injunction. *See* 534 F.Supp.2d 1290. In addition, the specific performance of the collateral security clause by way of permanent injunction was supported at the summary judgment stage by an abundance undisputed material fact, including admission by defense counsel of impending financial ruin. *See id.* The second case, *Canal Authority of State of Florida*, does not mention exoneration or *quia timet*. *See* 489 F.2d 567 Furthermore that case arose out of an environmental dispute in the everglades, the substance of which is difficult to reconcile with the facts at play in collateral security cases. *See id.* The final case, *Louis v. Meissner*, never mentions *quia timet* or exoneration. *See* 530 F.Supp. 924. That case arose

out of the Immigration and Naturalization Service's arbitrary scattering of Hattian migrants, a circumstance equally difficult to square. *See id.*

Fundamentally, exoneration is the right of a surety to compel its principal to pay for a debt for which the surety's liability has already matured. *See Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 2245986, at *5 (S.D. Fla. May 29, 2008. On the other hand, *quia timet* is a right used to protect a party against an anticipated future injury when it cannot be avoided by a present action at law, for example, by allowing a surety to compel its principal to post collateral for an anticipated liability. *See id.* It may well be the case that Plaintiff is entitled to relief through the doctrines of *quia timet* and exoneration. However, exoneration and *quia timet* rights have historically been recognized only in conjunction with a decision by the Court on the merits, not, as in these cases, at the preliminary stage where little or no discovery has taken place. *Keating*, 753 F. Supp. at 1155. Therefore, such a determination is not to be made at this stage.

## IV. Conclusion

Accordingly, the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that:

1. Plaintiff's Motion for Preliminary Injunction **(DE 30)** be, and the same is, hereby **DENIED.**

2. The dates for final pretrial conference and trial set in the Scheduling Order **(DE 17)** are **VACATED,**

3. New dates will be set by separate Order of the Court.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal

Justice Building and United States Courthouse, Miami, Florida, this 22nd day of October, 2015.

/s/ James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc: All counsel of Record